**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 24-CR-157-02 (TSC)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANGEL HALL,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. This memorandum, together with such evidence as may be presented at the sentencing hearing and the government's allocution at the time of sentencing, is intended to outline to the Court relevant matters relating to what the government believes would be an appropriate sentence in this case. Because of this conviction, the government has reviewed the application of the advisory Sentencing Guidelines, the Final Presentence Report ("PSR") prepared by U.S. Probation Officer ("USPO") Ms. Kenika Dixon, *see* Final PSR ECF #51 and her sentencing recommendation to the Court, *see* USPO Ms. Dixon's Recommendation ECF #52, the relevant factors set forth in 18 U.S.C. § 3553, and the defendant's plea for any impact on the appropriate sentence for the defendant in this matter. ***Based on that thorough and comprehensive review, and consistent with the defendant's plea agreement, the government agreed to cap its allocution to the bottom of the Guidelines Range for incarceration as ultimately determined by the Court followed by three years of Supervised Release.***

## I.  INTRODUCTION

On September 23, 2025, the defendant pled guilty to the Indictment pursuant to a written plea agreement. Defendant Hall agreed to plead guilty to Count Two of the Indictment, charging her with Carjacking and Aiding and Abetting, in violation of Title 18, United States Code, Section 2119, and 2. Defendant Hall understood that a violation of 18 U.S.C. § 2119(1) (Count Two) carries a maximum sentence of 15 years of imprisonment, a fine of $250,000, or both; a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); and an obligation to pay any applicable interest or penalties on fines not timely made; an obligation to pay any applicable interest or penalties on fines and restitution not timely made. In addition, defendant Hall agreed to pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia. Your client also

## I.  FACTUAL BACKGROUND

On November 1, 2024, at approximately 10:47 p.m., A.A drove her black Chevrolet Malibu to the Subway fast food restaurant located at 4518 Benning Road SE, Washington, DC. She parked in a parking space just outside the Subway's front door and went inside to order food. A.A. wore a black hoodie with a yellow emblem on the front, light jeans, and a hat. At 10:48 p.m., defendant Angel HALL ("HALL") and co-defendant, Brian Allison ("ALLISON") walked

across the parking lot and entered the Subway.



*The blue circle denotes A.A., whose face is blocked by the sign. The green circle denotes ALLISON, and the red circle denotes HALL.*

HALL and ALLISON left the restaurant without ordering but milled around in the parking lot for several minutes. A.A. left the Subway, carrying her order, when ALLISON approached her. ALLISON flashed the butt of a pistol that he was holding in his pocket, and he said, "Gimme those fucking keys or I'm gonna bust your head." A.A. handed ALLISON her keys and walked to the passenger side of her vehicle with her hands raised. ALLISON also demanded A.A.'s phone and wallet, and she gave them to him. When ALLISON had A.A.'s wallet, he took out her Navy Federal Debit card and asked for her pin. A.A. gave ALLISON the pin, and he asked if she was sure the pin was correct. A.A. assured ALLISON that the pin was correct, and ALLISON said if the pin was not correct, he would kill her.

ALLISON tried to open the trunk of A.A.'s car with the key fob, but he was not successful. Surveillance footage captured the lights of A.A.'s car blinking and A.A. gesturing towards the

trunk of the vehicle, but the trunk never opened.

While ALLISON and A.A were by the vehicle, HALL—who had been standing lookout at the edge of the parking lot—approached A.A.'s vehicle and stood next to A.A., opposite ALLISON. ALLISON then told A.A. to get into the front passenger seat of her car. A.A. did so with her hands raised, and as she was getting into the car, A.A. heard ALLISON say "Come on and get in" to HALL. HALL got into the rear passenger seat immediately behind A.A. ALLISON got into the driver's seat and drove off. Prior to leaving the parking lot area of the Subway shop, ALLISON told HALL that if the victim does anything to shoot his ass or words to that effect.



*The blue circle denotes A.A., while being forced by the defendants to get into the passengers' seat of her vehicle. The green circle denotes ALLISON, and the red circle denotes HALL.*

ALLISON drove A.A. and HALL down side-roads that A.A. did not recognize. ALLISON kept saying that he felt like someone was following them. While they drove, ALLISON referred to A.A. by male pronouns. A.A. corrected ALLISON, telling him that she is female, and ALLISON hit the steering wheel out of frustration, exclaiming, "I fucked up!"

ALLISON then told A.A. that he was going to give her belongings back and that he was not going to hurt her.

Once ALLISON realized that A.A. was a woman, the atmosphere inside the car changed. ALLISON and HALL tried to make friendly small talk with A.A. HALL talked about her five children and how she used to be in the Air Force. ALLISON complimented A.A. on how well her car handled, and he also complimented A.A. on her looks, kissing her on her left cheek.

At 11:05 p.m., ALLISON parked outside of the 24/7 Tobacco and Grocery, located at 4942 Marlboro Pike, Capitol Heights, Maryland, which is roughly 1.5 miles from Subway. At the 24/7 Tobacco and Grocery, both HALL and ALLISON got out of the car. As ALLISON got out of the car to use A.A.'s ATM card, ALLISON told HALL to get into the driver's seat and watch the victim. ALLISON then told HALL to "bust" the victim if she tried to leave. HALL took ALLISON's place in the driver's seat of A.A.'s car so that A.A. could not take back control of her vehicle. ALLISON then went inside the convenience store. A.A., still wearing her hat and dark sweatshirt with the yellow logo, stayed in the front passenger seat.

ALLISON walked to the ATM at back of the 24/7 Tobacco and Grocery and used A.A.'s debit card to withdraw $500. He then walked to the register, holding what appeared to be a wad of cash, and purchased several items. *See* Figure below of Allison withdrawing $500.



At 11:14 p.m., HALL waved at ALLISON to get his attention. ALLISON finished purchasing the items and returned to the A.A.'s car. ALLISON switched seats with HALL, retaking the driver's seat, and HALL got back into the rear passenger seat behind A.A. ALLISON then left the parking lot and turned back on Marlboro Pike.

After driving for a few more minutes longer, ALLISON parked at the top of the hill in the 5700 block of Southern Avenue SE, Washington, DC. ALLISON took a glove from A.A.'s glove compartment and used it to wipe down A.A.'s car keys and the steering wheel of her car. ALLISON then gave A.A. her car keys, phone, wallet, and debit card. ALLISON and HALL walked southbound on Southern Avenue towards Central Avenue SE.

Defendant HALL knowingly, intelligently and voluntarily committed the carjacking with the knowledge and awareness that ALLISON was armed with a firearm prior to approaching A.A. and ALLISON participated in the commission of the carjacking of his own free will. Defendant HALL was not aware of any information that contradicts the indictment in this case.

## III.  SENTENCING CALCULATION

### A.  Base Offense Level

For Count 2: Carjacking and Aiding and Abetting, 18 USC §§ 2119 and 2; U.S. Probation calculated the following: The base offense level is 20. USSG §2B3.l(a). Specific Offense Characteristics: A firearm was used to convey a specific (not general) threat of harm (e.g., pointing the firearm at a specific victim or victims; directing the movement of a specific victim or victims with the firearm) [to wit: the victim was directed to give her keys and wallet over via threat of a firearm]. Therefore, a six-level increase applies. USSG §2B3.1(b)(2)(B). Specific Offense Characteristics: The victim was abducted to facilitate the commission of the offense. Therefore, a

four-level increase applies. USSG §2B3.l(b)(4)(A). Specific Offense Characteristics: The offense involved carjacking. Therefore, a two-level increase applies. USSG §2B3.1(b)(5). Thereby, the Adjusted Offense Level is 32. *See* Final PSR ECF #51 ¶¶23-30.

Acceptance of Responsibility: USPO Ms. Dixon concluded that the defendant has clearly demonstrated acceptance of responsibility for the offense by pleading guilty. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). *Id*. ¶32.

Based upon a total offense level of 30 and a criminal history category of I, the guideline imprisonment range is 97 months to 121 months. *Id*. ¶70.[1] Consequently, the United States avers, and consistent with defendant Hall's plea agreement, that the defendant should be sentenced to a term of incarceration of 97 months' imprisonment to be followed by 36 months' Supervised Release.

## UNITED STATES' ANALYSIS OF THE SENTENCING GUIDELINES

Even though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated.") Moreover, the Guidelines' recommended sentencing range will ordinarily "'reflect a rough approximation of sentences that might achieve [18 U.S.C.] § 3553(a)'s objectives.'"

---

[1] USPO Ms. Dixon's Guideline Calculations listed *supra* are consistent with the government's calculations as outlined in defendant Hall's Plea Agreement. *See* Defendant Hall's Plea Agreement ECF #41.

*Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) (*quoting Rita v. United States*, 551 U.S. 338, 347-50 (2007)); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, comment., backg'd. *Dorcely*, 454 F.3d at 375.

Notably, based on the facts of this matter and, *inter alia*, the defendant's terrifying actions against the victim in this case are very significant and concerning - *see* Final PSR ECF #51 ¶¶9-18 – all demonstrates that this Court should sentence the defendant to 97 months' imprisonment to be followed by 36 months' Supervised Release.

## IV.  SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing defendant Hall.

**(1)   The nature and circumstances of the offense and the history and characteristics of the defendant**.

### (A)  The nature and circumstances of the offense

The nature and circumstances of this offense strongly support the government's recommended term of imprisonment. The defendant actively participated in a violent and terrifying carjacking that placed the victim in immediate and profound danger. The victim had no way of knowing what the defendants intended to do to her, a reality that intensified the fear, vulnerability, and trauma inflicted during the crime.

This was not a momentary lapse in judgment. It was a deliberate and dangerous criminal act that threatened not only the victim's safety but the security of the community at large. Although defendant Allison initiated the kidnapping and carjacking, defendant Hall's role in the crime was instrumental to the crime's success and the United States cannot say one defendant had a greater or smaller role. In fact, defendant Hall's act as a lookout during the initial carjacking and kidnapping and then voluntarily reentered the vehicle after the offense was underway, further facilitating its commission.

Moreover, during the crime, defendant Allison asked defendant Hall "if the victim does anything to shoot his ass" (Final PSR ECF #51 ¶11) and later on to "bust" the victim if she tried to leave. Defendant Hall's presence served as additional muscle, and defendant Hall was ready and prepared to physically subdue A.A. if necessary. Although defendant Hall was alone with the victim at times, defendant Hall never attempted to assist A.A. or facilitate A.A.'s escape - conduct that demonstrates defendant Hall's full and equal participation in this brutal offense. The Probation Office found neither defendant to have a mitigating or aggravating role and views them as equally culpable for the convicted offenses. (*Id*. ¶19).

The defendant's conduct demonstrates a clear disregard for the law and for human safety.

A sentence of 97 months' incarceration is therefore necessary and appropriate to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from further crimes.

### (B)   The history and characteristics of the defendant

Further, the government has reviewed the defendant's Mental and Emotional Health and Substance Abuse history as outlined in the PSR. *Id*. ¶¶35-36. Defendant Hall reported prior diagnoses of Attention Deficit Hyperactivity Disorder (ADHD), depression, and anxiety. Although she could not recall what medications she had been prescribed or where she was diagnosed, she stated that she believes she requires ongoing mental health treatment. *Id*. ¶55.

With respect to substance abuse, defendant Hall admitted to recent drug use and reported an addiction to crack cocaine and fentanyl, identifying fentanyl as her drug of choice. She stated that she completed a Unity Health care drug treatment program, although she could not recall when. Despite this history, she indicated that she does not believe she currently requires further substance abuse treatment. *Id*. ¶58. Notably, the PSR reflects that at the time of the instant offense, the defendant tested positive for cocaine and fentanyl. Her admitted ongoing substance use, coupled with her positive drug test at the time of the offense, raises significant concerns regarding her judgment, deterrence, and risk of recidivism.

### (C)   The Need to Afford Adequate Deterrence to Criminal Conduct, and the Need to Protect the Public from Further Crimes of Defendant

The Court must also consider "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2)(B), (D). The United States respectfully submits that these factors

justify a sentence of 97 months' incarceration.

This Court is well aware of the significant impact that armed carjackings have had on the District of Columbia, and the corresponding need to deter such conduct. A sentence that provides both specific and general deterrence is especially important in this case. Meaningful accountability is necessary not only to discourage this defendant from reoffending, but also to send a clear message that violent carjackings will be met with serious consequences. If the community is to stem the tide of this type of violent criminal conduct and prevent further harm, a substantial custodial sentence is warranted.

**(D) The need to avoid unwarranted sentencing disparities among defendants with similar records**

The goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. As discussed *supra*, this Court should sentence the defendant to a significant sentence of 97 months' imprisonment to be followed by 36 months' Supervised

Release. Therefore, based on the facts and evidence in this matter there would be no disparities among other defendants with similar records.

More broadly, the government's requested low-end sentence is reasonable, as it strikes the balance between considering the defendant's background and the facts of this case. According to the Judiciary Sentencing Information (JSIN): During the last five fiscal years (FY2020-2024), there were 38 defendants whose primary guideline was §2B3. l, with a Final Offense Level of 30 and a Criminal History Category of l, after excluding defendants who received a §5Kl.1 substantial assistance departure. For the 38 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 90 month(s) and the median length of imprisonment imposed was 97 month(s). For all 38 defendants in the cell, the average sentence imposed was 90 month(s) and the median sentence imposed was 97 month(s).

## VI.    CONCLUSION

For the foregoing reasons, the United States recommends a sentence of 97 months' imprisonment to be followed by 36 months' Supervised Release. The government respectfully avers that its recommended sentence to the Court would therefore reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and most importantly, to afford adequate deterrence and to protect the public from further armed carjacking and crimes of the defendant.

WHEREFORE, the United States respectfully avers that this Court should sentence defendant Hall to a significant sentence of 97 months' imprisonment to be followed by 36 months' Supervised Release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: _/s/ Emory V. Cole_____
    EMORY V. COLE
    PA Bar No. 49136
    JAMES NELSON
    DC Bar No. 1613700
    Assistant United States Attorneys
    U.S. Attorney's Office
    601 D Street, NW
    Washington, D.C.   20530
    Office: 202-252-7692
    Email: Emory.Cole@usdoj.gov